Good morning, and may it please the Court, I'm Joshua Weiss from the Federal Public Defender's Office here on behalf of Appellant John Magdirila. I first wanted to thank the Court and the Government for the courtesy of moving the argument to today. Were you the original lawyer? I am not, Your Honor. I see. Well, that's particularly nice of you to do it, so thank you. Thank you, Your Honor. I plan to reserve two minutes of my time, and I'll, of course, keep my eye on the clock. To start, an inventory search may not be used as an after-the-fact excuse to cure an unjustified, warrantless investigatory search, and yet that is exactly what happened here. We know that from four aspects of the record, that the search that occurred here was motivated for investigatory purposes and the inventory search excuse was used after the fact as a pretext. The first way we see that is that Officer Robinson admitted during the hearing that items he found in the car that he did not view as having evidentiary value, he paid no attention to. This is especially clear with the printer cartridges, where he said, no, I didn't pay attention to them when I first found them, and then he admitted, yes, later, once we got back to the station and I found the counterfeit money, then I realized the printer cartridges. But what do you mean paid no attention to? I mean, they didn't deserve any attention, but that doesn't mean he wasn't inventorying them. Well, he did not write those items on the inventory form, nor any of the other items that had no evidentiary value, and he said that he wasn't noting them, he didn't say he was inventorying them. So it seemed to me that if we were just looking at that form, you'd have a very strong case. But they did put everything down on the, what was it, the incident report. Right, the incident report. And so together, everything was documented, isn't that right? To a certain extent, Your Honor, but a couple of responses to that. First of all, the purpose of the inventory form, it has two purposes, but mainly it's to ensure that the person whose property is being taken away is protected and listed, so that a copy of that form is supposed to be given to the tow truck driver who's then all the items are there. But that's if they were left there. Were they left there? The test, the, excuse me, the record is not clear about whether the officers removed all the items on the spot, and then when they actually... Somehow I got the impression they did, but... Yeah, I mean, we do know that no further search was conducted, but the incident report was written the day after the truck was towed. And so it wasn't done there on the spot as was required in order to actually inventory the items. What wasn't done on the spot? Excuse me, the incident report where the items are actually listed. The form, the form wasn't filled out on the spot. Well, the CHP 180 form, excuse me, is the inventory form. But it was filled out, or at least partly filled out, and then as Judge Prezant noted, the police report contained the rest of it. But that was the, it's the police report that was written the day after, after... But why does that matter? I mean, it seems like it's a bit of a technical argument as to whether every item was on there or not. I don't believe so, Your Honor, because it wasn't just that there was one small item missing. The only item on the actual inventory form was the gun, and then the iPhone and the watch, which we don't know where those came from, but Officer Robinson... Isn't it a fair way to look at it as the police officer put what's the most, perhaps the most valuable or important things on the incident report, an iPhone or an Apple watch? You know, if someone's missing it, they'll complain, whereas an inkjet toner, he'll put it later in the police report. I mean, that's, to me, seems like what the officer did here. Well, actually, the Eighth Circuit in U.S. v. Rowland specifically said that doing exactly what Your Honor just described, choosing the evidentiary items and then the items of the most value is not sufficient for an inventory form. Well, that's true, but the inventory search affirmatively incorporated the police report, didn't it? Well, Your Honor... I mentioned... Is that so? The exact line it says is, see report, driver was stopped for no license plates. It incorporates the incident report as to a description of the arrest. It doesn't say, see report for a list of the items. I mean, to me, it sort of matters whether they... The tow truck part, i.e., that somebody else is going to have this, would matter if, in fact, the stuff was left there, but we don't know that. That's true, Your Honor. And I had the impression it wasn't, but I don't know why. Yeah, I mean, he did... Officer Robinson did say no one else conducted a search afterwards at any other point, which is important because there's no incident report. There's no inventory search done later. Another point I want... So that suggests they must have taken everything... That they might have removed the items, but I think the backpack is a very crucial one here. But they had done two inventory searches? I'm sorry, Your Honor. If they did, it would... I mean, there's nothing to prohibit them from doing two separate inventory searches. Nothing prohibiting it, but they did... Officer Robinson explicitly testified that it was not going to happen. Yeah. And that gets to the inevitable discovery issue. One other point I wanted to make here was it wasn't just the lack of inventorying. The incident report also kind of lists all the items as pieces of evidence. The items that are not evidentiary, it refers to far more vaguely. It just says backpack and other items with it, whereas the evidentiary items, it lists out very specifically, which was another factor considered in both U.S. v. Johnson and Rowland, where the items that were paid more attention to, that were listed more carefully, were only the evidentiary items. The timing here is also suspicious. In both the incident report and in the declarations, the officer said that the inventory search did not begin until after the glove compartment search happened. It was only at the hearing that he said the inventory search started from the beginning. And this, I think, as this Court said in Gray, quoting Rowland, suggests that something to suggest the police raised the inventory search banner in an after-the-fact attempt to justify a simple investigatory search for investigatory purposes. That timing, the fact that his explanations changed indicates that he was not actually doing an inventory search from the beginning. Although it's pretty clear they could have done, there's no disagreement that they could have done a search of the glove compartment. That's regardless, right? No, Your Honor. We're contesting every phase of the search. So I believe the government's appeal now is that the glove compartment search was part of the inventory search or acceptable under the parole because the passenger was a parolee. But we contest both of those claims. Why wouldn't it be? I mean, it seems to me that at a minimum, they both said, hey, this isn't our car. At a minimum, wouldn't the officer have been able to look in the glove compartment and determine whose car it was, regardless of inventory search or anything else? No, Your Honor, because before they looked in the glove compartment, Mr. Magdarella had already given them the true name of the owner and the officers had looked up that registration. So there was no reason to look in the glove compartment to confirm what they already knew. And there's a California Supreme Court case from last year, U.S. v. Loka, saying that officers may not search a glove compartment to look for ID or registration information. I'm looking at the inventory. The inventory form is the one that's called vehicle report. Is that it? That's correct, Your Honor, yeah. It's ER-137. What does it have on it? It has the iPhone on the Apple Watch. What else does it have? That is it, except there is a firearm checked, I believe, in the checkboxes above. But it does not list the backpack, the lockbox, the BB gun. Where would you put it? I mean, it's a lousy form. I mean, where would you put it on here if you were going to actually have an inventory? If you flip to the next page on ER-137. A narrative, that's where you'd put it? There is more room to list other items. A narrative. Yes. Yes, Your Honor. It's not really an inventory form as such. But it does, the office's policy required that all of the property found in the car had to be inventory. Right, I know, it's just that it doesn't seem to have a form that's conducive to it. That might be so, Your Honor, but nonetheless, it was the policy. And I just want to emphasize how similar this case is to U.S. v. Johnson and U.S. v. Rowland. But how do you get around U.S. v. Gary, which is a Ninth Circuit case, which says, you know, even if you don't fully follow the policy, that's fine? That's true, Your Honor, but that case also emphasized both U.S. v. Johnson and U.S. v. Rowland, where a failure to follow policy combined with other indications that the search was actually a pretext and not for an inventory purpose, those two issues combined would show an improper search, which is what we have here. We have a failure to follow the policy and other aspects of the record. But also, if it's going to be an inventory search, there has to be an inventory. Exactly. And we have none here. Well, that's the problem. I'm not sure you have none. But if you had had just the first forum, it seems to me that to say, well, we didn't write that down, but that's just a technical mistake. It's not a technical mistake if it's an inventory search because then there's no inventory. Yeah, and I urge the Court to look carefully at that incident report, which was written the next day, not when the inventory was supposed to happen, and really just list items of evidence, which, again, the courts have emphasized is not what the purpose of the inventory is. I see I'm running low on time. I thought the incident report listed everything. Well, it listed everything, but the backpack is a crucial piece here, and it just said backpack and other items, whereas the other, it didn't list out exactly what was in the backpack, as opposed to the evidentiary items where it did. And, again, the backpack, they only had a right to look through the backpack on the basis of the so-called inventory search, and yet none of the items in the backpack were listed on the inventory form or in the incident report. They opened the backpack, looked through the lockbox, found the gun, and didn't list any of the other items there. Okay. Thank you very much. Thank you, Your Honor. Good morning, Your Honors. May it please the Court. Roger Shea on behalf of the United States. Here we have a case in which officers came upon a defendant who was illegally parked, blocking an alley with a car with a non-valid license plate, and within moments they discovered the passenger was on active parole and the defendant was driving without a valid license. Here in routine patrol, officers were required to inventory and impound the car, and that's what happened. Now, the inventory form that Your Honors have seen, in the five lines, the officers went beyond the inventory report in gray. They noted the presence of the iPhone, iWatch. They checked the box regarding a spare tire, a radio, other items in the car, and, as Your Honors have noted, incorporated the report that I believe was written on the same night. That incident happened around 11 p.m. on October 23rd, but the report wasn't finalized until October 24th. Can I ask about the inventory form? Because it doesn't seem to be so. It's actually titled a vehicle report, and that seems to be what it is. What's the condition of the vehicle? It's almost as if this was put together to determine whether the vehicle was damaged, more so than an inventory form. Is it standard procedure to write all the inventory items on this vehicle report as part of an inventory search when that's not? As of the record, by my understanding from other cases, multiple jurisdictions in California use a CHP 180 form for the condition of the car and perhaps for inventory. But as Your Honor noted, there's just five lines. Well, I know. So that's a problem with the procedure because, I mean, obviously we have a line drawing problem here. And the purpose of the exception is to allow for an inventory to protect both the police department, the towing company, and the individuals, right? If there's no inventory, i.e., if you don't list out what the items are that's in the car, then it's a pointless exercise. So to start saying, well, it doesn't matter whether you list them out, it seems to me you're saying it doesn't matter whether you're really doing an inventory search. So when you have a form that makes it very difficult to actually do the inventory search, it seems that we're at cross-purposes. So, Your Honor, it may be difficult. It doesn't seem like a reason. It doesn't seem like an excuse for not doing the inventory search. Understood, Your Honor. It may be difficult in this form if possible, but officers did the best they could in writing down C report. And that incorporated the report started on the court. But the report didn't exist at the time they wrote C report. That's correct. However, it still serves the purpose of the community caretaking function in that defendant will eventually receive a copy of that report to see what property was in his car. Is that right? Did he receive it? Do we know that? Receive a copy of the report eventually. And do we know whether all the items were taken out of the car so there was no towing company problem? So, again, I agree with defendant's contention that it seems like it was, but there wasn't a clear indication in the record because the items were brought to the police station and it seemed that the car had been towed. In regards to the ink cartridges, it's clear on ER 118 those ink cartridges were in the backpack. And the officers brought the backpack to the station and inventoried it as safekeeping, not as evidence. And then when they learned there was a problem, then they went back to the... Yes. And that doesn't speak to the officer's motivation at the time they conducted the inventory search. So here it has to show that the officer's sole motivation was investigation. And here the district court made a credibility finding. Sole motivation or main motivation? Sole motivation based on Colorado v. Bertine and the Ninth Circuit cases that said dual purposes are okay. And the cases cited by defendant are as distinguishable. In Johnson, officers explicitly admitted in the arrest report and the search warrant that they were searching for items. And let's just look at the factors that the Ninth Circuit didn't necessarily discuss, but leading up to the search in Johnson. There's an arrest warrant for the defendant. Rather than arresting defendant outside of their house, officers manufactured a traffic stop and boxed him in, and in a sense could be argued created the inventory search and then made those explicit admissions. Or Johnson relies on United States v. Orozco in which officers receive a confidential tip that a truck might be carrying methamphetamine. And officers testified it's common knowledge that you can use administrative search function as a means to search for evidence. That's clearly not the case here. And I'd like to also address that there's probable cause to search the car. Officers verified that the parolee was on active parole through both the computer system and calling the help. Yes, but how did that allow them to go into the glove compartment? The California Supreme Court case that's relied upon seems clearly to say you couldn't do that. It's not under his control. Understood, Your Honor. U.S. v. Corte we cited in our brief cites the People v. Schmitz, the California Supreme Court. People v. Schmitz says you can't do this. You can do other things, but not this. It says we don't specifically address the glove compartment. And factors to consider, and I'll address them all here, favor the government. Whether the glove box is locked or unlocked, it's unlocked. The parolee's distance to the item, uncontested within reaching distance. And finally, looking at the defendant's reasonable expectation of privacy. Schmitz noted that when there's a passenger in the car. What about the reasonable expectation of the person who owns a car? I mean, my understanding of the limitation, if I'm driving around in the car with some passenger in the front seat, I don't expect them to be opening my glove compartment. So here, looking at ER 182, defendant testified that the parolee had a relationship with the owner of the car. So it's the owner of the car, the parolee, then defendant. While he may have a reasonable expectation of privacy to challenge standing, it's certainly less his reasonable expectation of privacy in a glove box. Perhaps he stores things in the back seat, but likely not going to go in the glove box of someone two degrees removed from him. So also. Kagan. Yes, that's right. So therefore, why is he going to the glove box? Why do they think that he, in some usual sense of the term, has control over the glove box? So the defendant has not, doesn't have, exactly, Your Honor. The defendant doesn't have control of the glove box. But that's not the question in the parole search question, unless you're making a standing argument. The parole search question is whether the parolee had control over the glove box. Correct. And given the unlocked glove box and the distance, and I want to point to another fact. I would like to say that your other argument is stronger. Fair enough. Because. Well, this is an alternative argument, right? Yes. Yes. Right. And I'd just like to point out the fact that when the police activated their lights, the parolee exited the car without any warning from the police, therefore separating himself from the glove box, making it more suspicious. Well, that's fine, but the problem here is, and it's the same problem when you're searching somebody else's house for a parolee, which is you don't, there are conflicting policy problems, which is why the parole conditions don't say you can search any place where the parolee is. It says you can search his house and things under his control, because otherwise you're impinging on other people's rights. I understand, Your Honor. That's the problem. So you have to be somewhat vigilant about that, and I think the California Supreme Court actually was. So I'll just submit that the factors in Schmitz and Ninth Circuit supports a parole search, but going backwards, the inventory form here went further than the inventory form in Garay, knowing the conditions of the tires, the spare tire, iPhone, iWatch, and then again incorporating the Inglewood Police Department report. And the district court again made a credibility finding regarding Officer Robinson that he testified that once he found out the defendant was unlicensed, he was required to impound and tow the car according to Inglewood Police Department policy, and that's what happened. Now, again, perhaps even dual motive is permissible, but there certainly isn't evidence that the sole motive of the search was investigation, clearly distinguishable from U.S. v. Johnson and Rowland in a circuit case. I think there was testimony that they only recorded evidence. Officers were searching for drugs, and they also brought a dog sniff in that instance. So I think the record taken as a whole here, looking at it as a routine police stop, leading to traffic violations, required the officers to search the inventory, impound, and search the vehicle. So given the validity of the inventory search and the alternative justification of probable cause to search based on parolee status, this court should affirm the district court's dismissal and the motion to suppress. Thank you very much. I gather you have 29 seconds. Thank you, Your Honor. In terms of the incident report, if you look at ER 120. You don't have 29 seconds, Paul. Give you a minute. Go ahead. Oh, I'm sorry. The incident report did not list the items that it didn't inventory them at all. It just said backpack and other accessories. Well, Gary does seem to say that that doesn't matter. I mean, I don't understand how you can have an inventory search without an inventory, but we seem to have said so. I wouldn't say it says it doesn't matter. It's just on its own that that's not enough. But lack of an inventory plus evidence of an improper motive is exactly what does show there's an improper search. That was the case of Johnston. But as I understood our law, it isn't plus. If you don't follow the – I mean, I would say if you don't do an inventory, it's not an inventory search. Then even if you do, there may be a pretext issue. So Gary seems to say that it doesn't matter if you don't actually do the inventory. Well, Your Honor, our initial position was either a failure to do an inventory or a pretext would be sufficient to show a problem. Gary, our understanding indicates that the failure to do a proper inventory becomes a factor to analyze under the pretext analysis. And I just want to point out that in Johnston, there was a lawful impound, a policy requiring an inventory search, just as we have here, and yet because of the combination of a failure to properly inventory and evidence of pretext, it was an improper search. But there you did have actual evidence of pretext from before the search ever occurred. I mean, here they just encountered these people on the street. They were not looking for them. Yes, Your Honor, but they never even claimed to be doing an inventory search until way afterwards during the – at the hearing. When they initially did it, they said we were looking for evidence because he was a parolee and because we were arresting him anyway. But they did – I mean, at the scene, they at least did an inventory form or the best inventory form. Right. But they always – but they claimed that they were only doing that after they had already opened the glove box. I see I'm quite low on time. Okay. Thank you very much. The case – and again, thank you for taking this over. United States v. Magdarilla is submitted. It will go to Navigator Specialty Insurance Company.
judges: Berzon, Nelson, Lee